PETER B. CARLISLE   2209
Prosecuting Attorney
**JAMES M. ANDERSON   4477**
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honolulu, Hawai`i  96813
Telephone:  527-6518

Attorneys for State of Hawai`i

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| PETER HALLORAN, | ) | CIVIL NO.  04-00577 DAE-BMK |
| | ) | |
| Petitioner, | ) | **RESPONDENT STATE OF** |
| | ) | **HAWAII'S RESPONSE TO ORDER** |
| vs. | ) | **COMPELLING PRODUCTION OF** |
| | ) | **EVIDENCE; EXHIBITS A and B;** |
| JAMES COOK, Warden, | ) | **CERTIFICATE OF SERVICE** |
| Tallahatchie County Correctional | ) | |
| Facility, MARK J. BENNETT, | ) | |
| Attorney General, State of Hawaii, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

**RESPONDENT STATE OF HAWAII'S RESPONSE
TO ORDER COMPELLING PRODUCTION OF EVIDENCE**

Respondents James Cook, Warden, Tallahatchie County Correctional

Facility, and Mark J. Bennett, Attorney General for the State of Hawaii, by and

through its counsel Peter B. Carlisle, Prosecuting Attorney for the City and County

JMA:rrg

of Honolulu, State of Hawaii, and James M. Anderson, Deputy Prosecuting

Attorney, provides the following response to this Court's March 10th, 2006 Order

Compelling Production of Evidence.

In its Order Compelling Production of Evidence, this Court requested

information concerning at what point in time Petitioner and Domingo Ruiz were

incarcerated together at the OCCC, the time of the men's incarceration at the

OCCC being determinative of whether Ruiz' information concerning Petitioner's

sexual assault offense was known to Petitioner before or after trial.

The pertinent dates of consequence are:  Petitioner committed the offense of

sexual assault in the first degree in the early morning hours of July 1st, 1996;

Petitioner was apprehended and arrested by the police at the scene of the attempted

sexual assault on the same date; Petitioner's jury trial commenced on March 25th,

1997; and, a jury found Petitioner guilty as charged on March 31st, 1997.

Respondent's records show that Petitioner was unable to meet his $50,000

bail, and was subsequently incarcerated at the OCCC from the date of his arrest in

early July of 1996, at least through his sentencing hearing on November 1st, 1997.

*See* Exhibit A.

Domingo Ruiz' testimony at the November 1st, 1997 hearing on Petitioner's

motion for a new trial suggests that he had a conversation with Petitioner about the

sexual assault offense before Petitioner's trial.  Ruiz testified that "about four

months" after the incident, "I went to jail for two days for a domestic dispute, and I seen [Petitioner] in there. And I recognized him, and I talked to him for a little bit. And then he explained to me that he had been arrested for attempted rape or something like that." *See* Appendix T at 15:24-16:3. Ruiz testified that he was jailed those two days at the OCCC. *Id.* at 16:10-12. Ruiz' testimony would place his and Petitioner's conversation during the months of October or November, 1996, before Petitioner's March, 1997, trial.

Ruiz was mistaken in his testimony that he spoke to Petitioner about four months after the July 1st, 1996 incident while serving two days at the OCCC for a "domestic dispute." Respondent's records show that the only time Ruiz was incarcerated for two days at the OCCC for a domestic-type offense was on April 28th, 1997. Respondent's records show that on January 28th, 1997, Ruiz was arrested for the abuse of a family or household member; that on January 29th, 1997, he posted bail and was released on his own recognizance; and that on April 28th, 1997, he was found guilty of the abuse charge and sentenced to two days' incarceration, a $150 fine, and one year of probation. *See* Exhibit B. He served his two-day term of incarceration at the OCCC. *Ibid.* Thus, it appears from Respondent's data that Petitioner and Ruiz were incarcerated at the same time at the OCCC in April of 1997, after the jury found Petitioner guilty as charged.

3

In its Order Compelling Production of Evidence, this Court stated that "[a] significant issue throughout Petitioner's proceedings and relevant to the disposition of Petitioner's claim is the timing of Petitioner's discovery of the alleged 'new' witness, Domingo Ruiz." *See* Order at 2. Concerned that this Court may consider Ruiz' testimony at the hearing on the motion for a new trial to be even marginally relevant to the disposition of Petitioner's claim, Respondent is compelled to offer the following points to the contrary.

First, Petitioner is procedurally barred from asserting his claim that he was improperly denied a new trial, which was premised upon Ruiz' new testimony. The Hawaii Supreme Court specifically ruled that it would not consider Petitioner's claim because, pursuant to **Hawaii Rules of Penal Procedure ("H.R.P.P.") Rule 40(a)(3)**, his claim had previously been ruled upon. *See* Appendix P at 1-3. Petitioner has not provided any legitimate excuse for his default, nor has he demonstrated that the failure to consider his claim will result in prejudice or in a miscarriage of justice. Thus, a state court's ruling that a claim is procedurally barred will bar a federal court's review of the same. **Coleman v. Thompson**, 501 U.S. 722, 724 (1991); **Smith v. Stewart**, 241 F.3d 1191, 1195 (9th Cir. 2001).

Second, as the trial court found, it was without jurisdiction to entertain Petitioner's motion for a new trial because the same was untimely. *See* Appendix

T at 22-23.  **H.R.P.P. Rule 33** provides that a motion for a new trial "shall be made within 10 days after verdict or within such further time as the court may fix during the 10-day period."  Hawaii law holds that the time limitation in moving for a new trial is jurisdictional and must be strictly complied with.  **State v. Meafou**, 67 Haw. 41, 44-45, 677 P.2d 459, 462 (1984).  Federal law holds that a motion for a new trial that fails to comply with the filing deadline is untimely and jurisdictionally barred as well.  **United States v. McKinney**, 952 F.2d 333, 336 (9th Cir.), *cert. denied*, 111 S.Ct. 2797 (1991).

Finally, Ruiz' testimony in no way shows that Petitioner was "actual[ly] innocent[]" of attempting to sexually assault his victim, as he contends in his petition.  *See* petition at 3, and addendum at 7-8.  Indeed, a review of Ruiz' testimony illustrates that his testimony was irrelevant and would not have changed the result reached at trial at all.

Under federal law, a motion for a new trial must meet the following criteria: (1) the evidence must be newly discovered after trial; (2) there must be diligence on part of the movant; (3) the evidence must be more than merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and (5) the evidence must be such as would probably produce an acquittal.  **Gallegos v. United States**, 295 F.2d 879, 881 (9th Cir. 1961).  The same is true under Hawaii law.  **State v. McNulty**, 60 Haw. 259, 267-68, 588 P.2d 438, 445 (1978).

Assuming, *arguendo*, the first and second prongs have been met, the remaining three have not. This is unequivocally clear when the testimony of percipient witness Orlando Wilson is compared to both Petitioner's and Ruiz' testimony.

In the early morning of July 1st, 1996, Orlando Wilson heard a woman screaming outside his apartment, quickly dressed, and while his fiancée called the police, jumped over his apartment's railing and ran to the apartment building next door. Appendix R, at 73-74, 86. Upon his arrival, he saw Petitioner *lying*--possibly kneeling, but not sitting--*on top of a woman*, who was on her back screaming, and saw Petitioner "punching [the woman] in the face, grabbing her neck, and pounding her head against the pavement." *Id.* at 74-75, 90-92. Wilson heard Petitioner yell at the woman, "[S]hut the fuck up, bitch[.]" *Id.* at 75. Wilson saw that Petitioner was dressed in black shorts, was shirtless, and, as he got off of the woman, saw that his erect penis protruded from the bottom of his shorts. *Id.* at 75, 94, 96-98. As Petitioner walked away, the police arrived, whereupon Wilson pointed him out as the perpetrator. *Id.* at 76.

At the hearing on the motion for a new trial, Ruiz testified that he was at an apartment building next door when he heard a woman screaming, whereupon he and his friend, a "Mexican guy, Rojelio, I think," ran outside and saw Petitioner and a woman in the parking lot. Appendix T, at 8. Ruiz saw Petitioner "standing up. He was trying to walk away. The lady was laying down, and she was pulling

his pants down. She was grabbing onto his leg, and he was trying to get away from her." *Id.* at 9:14-17. The woman was cursing at Petitioner, while Petitioner slapped her hands and said to the woman, "[G]et off me bitch, or you know, get the fuck away from me or something like that[.]" *Id.* at 9-10. Ruiz testified that he was present for "[a]bout a minute, minute-and-a-half when the police came." *Id.* at 11:10-11. He testified that he did not even know if other people were in the area, that he stood about seven to ten feet from Petitioner and the woman, and that he "didn't see nothing happen." *Id.* at 13-14.

The third prong of the new trial criteria requires Petitioner to show that the evidence must be more than cumulative or impeaching. **Gallegos**, *supra*. Ruiz' testimony was merely cumulative of Petitioner's testimony concerning the end of the incident, with the exception that Ruiz did not testify that he saw Petitioner "haul[] off and smack[ Lloyd] right across the head[]" as Petitioner testified at trial. *See* Appendix S, at 72-76. Petitioner is unable to satisfy this prong.

The fourth prong requires Petitioner to show that the evidence is material to the issues involved. **Gallegos**, *supra*. Ruiz' testimony was not material to the issue of Petitioner's guilt or innocence with respect to the charged offense. First, contrary to what Orlando Wilson testified he observed, Ruiz testified that he "didn't see nothing happen." Appendix T, at 14:18. Second, when Ruiz' testimony is viewed in the light of Petitioner's and Orlando Wilson's testimony, it

7

is readily apparent that what Ruiz saw was the end of the incident *after* Petitioner got off of his victim, and at the time he was attempting to flee the scene while his victim attempted to prevent his flight.  Petitioner cannot meet this prong as well.

The final prong is that Petitioner must show that Ruiz' testimony would probably produce an acquittal.  **Gallegos**, *supra*.  Because Ruiz was not in a position to see anything but the final minute of the incident when Petitioner was attempting to flee just as the police arrived, and such testimony was merely cumulative of Petitioner's own testimony, Ruiz' testimony was not even relevant to the issue of Petitioner's guilt or innocence.  As such, Petitioner cannot meet the fifth and final prong of the criteria for a motion for a new trial by showing that Ruiz' testimony would probably result in the jury acquitting him of the charged offense.

Other than where a petitioner's conviction violates due process, federal habeas corpus relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991).  Here, the state trial court's denial of Petitioner's motion for a new trial was proper where the court had no jurisdiction to entertain his untimely motion. Moreover, even if somehow the untimeliness of Petitioner's motion can be forgiven, where Petitioner's evidence was only cumulative, not material, and thus would not have resulted in his acquittal, the motion was utterly without merit as

well.  Petitioner was neither deprived of a fair trial nor due process of law.  **Estelle v. McGuire**, 502 U.S. at 72.

For the reasons above, Respondents ask this Court to deny Petitioner any relief and to dismiss the petition.

Dated at Honolulu, Hawai`i:  March 24, 2006.

Respectfully submitted,

STATE OF HAWAI`I
Respondent

By PETER B. CARLISLE
   Prosecuting Attorney

By   /s/ James M. Anderson
   **JAMES M. ANDERSON**
   Deputy Prosecuting Attorney
   City and County of Honolulu

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PETER HALLORAN, ) | CIVIL NO.  04-00577 DAE-BMK |
| ) | |
| Petitioner, ) | **CERTIFICATE OF SERVICE** |
| ) | |
| vs. ) | |
| ) | |
| JAMES COOK, Warden, ) | |
| Tallahatchie County Correctional ) | |
| Facility, MARK J. BENNETT, ) | |
| Attorney General, State of Hawaii, ) | |
| ) | |
| Respondents. ) | |
| ) | |
| _____ ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2006, a copy of the Respondent State of

Hawaii's Response to Order Compelling Production of Evidence will be served on

the following parties by U.S. Mail or via court jacket:

> PETER HALLORAN
> A0259579
> Tallahatchie County Correctional Facility
> 295 U.S. Highway 49 South
> Tutwiler, MS  38963-6900
> (via U.S. Mail)
>
> Attorney for Petitioner

HONORABLE MARK J. BENNETT
Attorney General
425 Queen Street
Honolulu, Hawai`i 96813
(via Court Jacket)

       /s/ James M. Anderson
**JAMES M. ANDERSON**
Deputy Prosecuting Attorney
City and County of Honolulu