ORIGINAL

Peter Halloran
Tallahatchie Co. Corr. Facility
A0259579 / Unit E3
295 U.S. Highway 49 South
Tutwiler, Mississippi  38963-5072

PETITIONER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 20 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PETER HALLORAN, | ) | Civ. No. 04-00577 DAE-BMK |
| | ) | |
| Petitioner, | ) | PETITIONER'S MOTION FOR RELIEF |
| | ) | FROM JUDGMENT;  EXHIBITS; |
| vs. | ) | CERTIFICATE OF SERVICE; |
| | ) | |
| JAMES COOK, Warden; | ) | |
| MARK J. BENNETT, Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

PETITIONER'S MOTION
FOR RELIEF FROM JUDGMENT

I.   INTRODUCTION

Comes forth Petitioner, pursuant to the Federal Rules of
Civil Procedure, Rule 60(b), who moves for relief from the ORDER
DENYING APPEAL FROM MAGISTRATE'S FINDINGS AND RECOMMENDATION FILED
June 30, 2006 (hereafter: "Order").

As grounds demonstrated below, Petitioner claims the Court
misconstrued witness testimony, failed to consider actual
transcribed court testimony, and established: (1) an inaccurate
time-line of individual witness observations, and (2) incorrectly

1

stated actual witness observations which failed to correspond to the actual witness statements contained within the transcripts of proceedings held at the state Circuit court, to conclude Petitioner failed to establish prejudice required by the Federal Rules of Criminal Procedure ("FRCP"), Rule 33 standard.

II.   ORDER DENYING APPEAL

On June 30, 2006, after finding that Petitioner did not meet witness Ruiz until April 28, 1997, establishing that Ruiz was in fact "newly discovered" evidence, the Court found that Petitioner was not entitled to habeas relief where: (1) Petitioner failed to fairly present the federal basis of his Hawaii Rules of Penal Procedure ("HRPP") Rule 33 Motion, and (2) failed to properly appeal the denial of the HRPP Rule 33 motion to the Hawaii Supreme Court.

However, utilizing the Fundamental Miscarriage of Justice standard (Coleman v. Thompson, 501 U.S. 722, 749-750 (1991); Edwards v. Carpenter, 529 U.S. 446, 541 (2000); Peterson v. Lampert, 319 F.3d 1153, 1156 (9h Cir. 2003)), the court found that: "Petitioner has shown cause for the procedural bar, but has not shown prejudice (Order at 11, ¶ 1).

Under the Federal Rules of Criminal Procedure, Rule 33, the Court found Petitioner satisfied the first three prongs of the FRPP Rule 33 standard, but failed to satisfy the fourth and fifth prongs (4. the evidence must neither be cumulative nor impeaching; and, 5. the evidence must indicate that a new trial would probably result in acquittal).

2

The Court ruled that Petitioner failed at the 4th prong where
Ruiz: "testified that he was present at the scene only for the
final one and one-half minutes before the police arrived (Order at
12, ¶ 1), and witness Wilson testified to various facts which
Ruiz's testimony "merely confirms Wilson's testimony that in the
final moments of the altercation, Petitioner was attempting to
leave (Order, Id.)."

The Court ruled that Petitioner failed at the 5th prong
where:

> "Ruiz's testimony is of limited value because Ruiz witnessed
> only about the final minute of the event and cannot offer any
> insight to the preceding events.  Wilson's testimony, however
> is more complete - he was the first witness to arrive at the
> scene, he called the police, and he remained at the scene
> until the police arrived.  Wilson's testimony is buttressed
> by both the victims's injuries and testimony, and also by
> Petitioner's own testimony admitting he punched, slapped, and
> forced the victim's head to the ground (Order at 12-13)".

The Court further denied Petitioner second ground of
Ineffective Assistance of Counsel.  The Court ruled the denial to
be based upon Petitioner's failure to demonstrate actual cause and
prejudice, nor demonstrate failure to consider the claim would
result in a fundamental miscarriage of justice (Order at 15, ¶ 2).

III.  RUIZ WITNESSED MORE, LONGER, THAN DID WILSON

Petitioner argues the Court erroneously found that the
testimony by Ruiz was "cumulative nor impeaching" because Ruiz's

testimony "merely confirms Wilson's testimony that in the final moments of the altercation, Petitioner was attempting to leave." According to both Wilson and Ruiz, this was not the case.

Both Wilson and Ruiz testified that they were first alerted to the altercation between Petitioner and the alleged victim by hearing screams: Wilson Testimony, EXHIBIT 1, pgs. 73-74; Ruiz testimony, EXHIBIT 2, pg. 9 at 7.

Ruiz testified that he arrived at the altercation scene 1 minute after hearing the screaming: EXHIBIT 2, pg. 9 at 10 (immediately upon hearing the screaming, Ruiz ran out directly and remained at the scene). Wilson testified that upon initially hearing the screaming, he first stepped outside briefly "to take a look" then exited the area, return to the interior of his apartment to dress: EXHIBIT 1, pg. 74 at 13-14. This testimony indisputably presents that Ruiz was present shortly after the initiation of the altercation either as soon if not earlier then Wilson, and remained witnessing the events while Wilson dressed.

Wilson next testifies that in order to return to the altercation scene after exiting it to dress, he first had to overcome a barrier ("Jumped over the railing, EXHIBIT 1, pg. 74 at 14)" then transit to the altercation site (EXHIBIT 1, Id. at 14-15) which was out of direct view from his apartment. This travel took time in addition to his: (1) exiting the scene to transit to his apartment; (2) his dressing; (3) his re-depart the apartment; (3) his overcome the barrier, and (4) his       travel to the altercation site - all while witness **Ruiz remained** at the site witnessing events.

4

Wilson during his transcribed testimony was not asked how long the altercation took, while Ruiz was. Ruiz when asked, first indicated he was unaware of how long the altercation he witnessed took: "I would have to say about, like, I don't know (EXHIBIT 2, pg 11 at 9-10)." Next, Ruiz guesses: "about a minute, minute-and-a-half, when the police arrived (EXHIBIT 1, Id. lines 9-11)."

During cross-examination, Wilson reluctantly admits that prior to jumping over the railing, he was unable to view the altercation scene and was unable to see anything due to a wall positioned between the two apartment buildings (EXHIBIT 1, pg. 89 at 8). Wilson further testified that he was required to run across a parking lot to obtain access to the altercation scene, during which time his view was further totally blocked by the wall (EXHIBIT 1, pg. 89 at 9-12). Wilson concludes that: he "really did not see everything" - "Not quite (EXHIBIT 1, pg. 89 at 24-25)." The Court within its F & R totally ignores and fails to reference Wilson's admission he "did not see everything," to Petitioner's prejudice.

Petitioner argues that absolutely no basis in testimony nor fact exists for the Court conclusion that: (1) Wilson was first at the altercation scene (Order at 12, ¶ 1), or (2) Ruiz was only present at the scene for the last 1 ½ minutes (Order, Id.). In light of Wilson's admissions he "did not seeing everything," these Court misconstructions comprise unfair unfounded Court opinions lacking a factual basis, but utilized as grounds to rule against Petitioner to deprive his due process and equal protection of

5

established federal law which form the basis for the fundamental
miscarriage of justice criteria.  The "actual [factual] prejudice"
present within the EXHIBITS is usurped by these unfair unfounded
court misconstructions.

Petitioner argues that the EXHIBITS' transcripts speak for
themselves.  Both Ruiz and Wilson left for the scene initially
upon hearing screams.  The events allegedly witnessed by Wilson
(who was never asked to guess at a time frame) were blocked
compared to those witnessed by Ruiz, and clearly did transpire  in
less time that those observed by Ruiz because of Wilson's extended
loss of view of the scene.  This is because Ruiz was present
longer, not having a totally blocked view nor experiencing
time-consuming out-of-site delays as Wilson did.

The EXHIBITS clearly adduce both Ruiz and Wilson's initial
observation of the scene were simultaneously triggered by
screams.  Ruiz arrived at the scene about the time Wilson heard
it from his balcony.  However, the transcripts evidence Ruiz to
have been at, and witnessed the altercation scene wholly and
longer then Wilson who admitted inability to observe the scene from
the balcony railing, returned to his apartment to dress, then next
required an extensive transit before the scene first came into view.
Both Ruiz and Wilson remained at the scene until conclusion when
the police arrived.  As the altercation lasted only about two
minutes, Ruiz was clearly present for the majority of it while
Wilson was not, admitting leaving the railing with its wall-blocked
view to return to his apartment then travel extensively to the
ground level, around the corner of his building, through a parking

6

lot until his view of the scene was first established, rendering his admission he "did not see everything."  See: EXHIBIT 1, pgs. 89-90.

IV.   RUIZ'S EVIDENCE IS NEITHER CUMULATIVE NOR IMPEACHING

There is absolutely no evidence in the record for the Court's conclusion that Wilson was first to arrive at the scene (F & R pg. 12, ¶ 2).  A review of EXHIBITS 1 & 2 show both Ruiz and Wilson's attention were obtained upon their hearing female screams.  In fact, EXHIBIT 2 at pgs. 8-9 show the probability was Ruiz arrived at the scene first where: (1) he resided on the first floor of an apartment building directly adjacent to the altercation site; and (2) he was not subjected to time-consuming transits involving returning to his apartment to dress, decent to a lower floor, nor crossing a parking lot and climbing up stairs.

It is a prejudicial unfair opinion of the Court in siding with the State against Petitioner to suggest Wilson's testimony is buttressed by both the victim's injuries and testimony (F & R pg. 13, ¶ 1), absent: (A) expert medical testimony confirming injury causation, and (B) the availability of Ruiz eye-witness testimony before the trial jury.  Petitioner avers the Court is not a medical expert, and the Court's subjective opinion only seeks to perpetuate deprivation of Ruiz's trial testimony. The conflicts within testimony of Ruiz and Wilson present issues of fact which no factfinder has yet an opportunity to resolve.

By admitting two different eye-witness versions of the altercation exist, the Court admits Ruiz's testimony: (1) is not cumulative as it differs from that of Wilson, and (2) Ruiz's

7

eyewitness testimony fails to impeach that of Petitioner.

Ruiz's testimony differs substantially from that of Wilson in many other areas of critical importance to Petitioner's claims of actual innocence.

Ruiz testified that he observed Petitioner "trying to walk away," EXHIBIT 2, pg. 9 at 14-15. Ruiz witnessed the alleged victim actively preventing Petitioner's departure by "pulling his pants down" and "grabbing onto his leg," EXHIBIT 2, pg. 9 at 14-17. Wilson's testimony conflicts with that of Ruiz claiming he witnessed Petitioner to be positioned prone on top of the alleged victim physically assaulting her (EXHIBIT 1, pg. 75 at 3-9). Wilson claims to have observed Petitioner's penis extending down from his shorts (EXHIBIT 1, pgs. 75 at 21-22), but Ruiz makes no such claim. Ruiz's arrival early at the scene verified with his testimony that he observed and heard the alleged victim yelling at Petitioner: "She was cursing him out (EXHIBIT 2, pg. 9 at 19)." Wilson attempted to claim he observed Petitioner assaulting the alleged victim from his balcony railing, but later admitting to lying saying he saw "not quite everything (EXHIBIT 1, pg. 90 at 1)." Ruiz observed the alleged victim assaulting Petitioner: "She was hitting his hands (EXHIBIT 2, pg. 9 at 25)."

Petitioner argues the Court to be incorrect in opining Ruiz's testimony to be cumulative. Ruiz's testimony conflicts with Wilson's testimony at every point on every issue. They are as different as night and day with Ruiz's testimony witnessing the alleged victim to be the aggressor, the abuser, and the facilitator of the altercation prolonging it by physically

8

restraining Petitioner from leaving. The interests of justice are sorely injured by the Court's effort to withhold Ruiz's critical mitigating eye-witness testimony from a trier of fact.

V.   THE COURT IGNORED THE MOST CRITICAL DOCUMENTED EVIDENCE

The Court has totally ignored the most critical evidence contained within the witness transcripts before it. State's witness Wilson clearly and indisputably admits on the record to lying as to his testimony of what he saw and when he saw it.

Wilson claimed that upon hearing screaming: "I went outside, took a look (EXHIBIT 1, pg. 74 at 4)." According to Wilson, what he saw from his balcony railing was a "birds eye view (EXHIBIT 1, pg. 78 at 11-12)" of the walkway of the adjacent apartment building of the alleged victim and the altercation site: "Of course [I can see people going in and out of the building]", "I can see the walkway, too (EXHIBIT 1, pg. 78 at 14-16)." Wilson claimed what he observed was sufficient for him to run back into his apartment to order his girlfriend to call the police before he departed the apartment to run to the scene (EXHIBIT 1, pg. 86 at 20-25).

Upon cross-examination, Wilson admitted seeing: "not quite everything (EXHIBIT 1, pgs. 89-90)" from his apartment balcony. Wilson reluctantly made this admission after being confronted with photographic exhibits of the altercation site totally blocked by a wall positioned to prevent his line-of-site between his apartment balcony railing and the altercation site (EXHIBIT 1, pg. 89 at 17-23).

9

Thus, Wilson's trial testimony that he initially eye-witnessed an assault by Petitioner upon hearing screams is false, misleading, and highly prejudicial to Petitioner. This false testimony renders the remainder of his testimony suspect. This suspect testimony take on Constitutional significance in light of Ruiz's contradicting testimony totally ignored by the Court to render its ruling against Petitioner. Such ruling deprived Petitioner of 5th, 6th, and 14th amendment rights to Due Process, Equal Protection, a fair trial, and the advantages of governing appellate federal law found within: Coleman, 501 U.S. 722, 749-750 (1991); Edwards, 529 U.S. 446, 541 (2000); and Peterson, 319 F.3d 1153, 1156 (9h Cir. 2003).

VI.   CONCLUSION

Petitioner through Ruiz's eye-witness testimony has documented and evidenced a claim of actual innocence which demonstrates a fundamental miscarriage of justice. Ruiz arrived early at the altercation site and observed no abuse by Petitioner, but abuse by the alleged victim. Ruiz did not lie, nor was any of his hearing testimony impeached.

This Court totally ignores eye-witness Ruiz's key evidence adduced at State hearing to incorrectly claim Ruiz's vindicating testimony merely "cumulative" while accepting as true Wilson's

//

//

//

10

statements he admits on the record to be false.  This action alone constitutes a separate, additional, fundamental miscarriage of justice which can only be corrected through setting aside the Order Denying Appeal from Magistrate's Findings and Recommendation.

Therefore, Petitioner prays for an Order setting aside this Court's 8/30/06 denial and issuing a decision consistent with the record before it as presented above.

DATED:  This __12th__ day of July, 2006.

_____
Peter Halloran
PETITIONER

11

## CERTIFICATE OF SERVICE

Petitioner herein certifies that on this date, he caused one copy of the foregoing Motion to be served, via prepaid U.S. Mail, by delivery to staff of the Tallahatchie County Correctional Facility for delivery to the U.S. Post Office in Tutwiler, Mississippi, in an envelope addressed:

        Peter B. Carlisle
        James M. Anderson
        Office of the Prosecuting Attorney
        City and County of Honolulu
        1060 Richards Street
        Honolulu, Hawaii  96813

DATED:   This 12th day of July, 2006.

                    _____
                        Peter Halloran
                        PETITIONER

12