ORIGINAL

Peter Halloran
Tallahatchie Co. Cor. Fac.
40259579
195 U.S. Hwy. 49 So.
Tutwiler, Miss. 38963

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 24 2007

at 4 o'clock and 00 min P m
SUE BEITIA, CLERK

Peter Halloran
    Petitioner
Vs.
James Cook, Warden
J. Bennet, Atty Gen.,
State of Hawaii
    Respondents.

U.S. Dist Court
District of Hawaii

CV. 04-00577 DAE-BMK

FILE IN CASE FOLDER

Petitioner's Request for Reconcideration of Certificate of Apealability

    Due to the fact that the petitioner is not an attorney he was unaware of the rule requiring a specific request for certificate of apealability and as I am currently extremely limited to access to the Law Library (or even an indpendant typewriter), I will do my best to describe the problem's I am having with your denial of relief, in hope's that this is what your looking for.

    To begin with if you look at Orlando Wilson' testimony of event's in the order which he discribes them to have accured, he claim's that he came out of his apartment upon hearing the screaming (exhibit 1 pg. 73 at 25 and pg. 74 at 1 and 2), stood outside watching what was happening (exhibit 1 pg. 74 and pg. 89 at 3-5) where he claimed to have had a "bird's eye view" of what was happening at the scene, which is where he claimed to be (exhibit 1 pg. 78 at 6-16) when aledgedly saw "the female was on her back and the male was on top of her" (exhibit 1 pg. 75 at 6,7) (note that it was the prosecutor who asked what he saw, but the defence attorny who later

had to ask where he was when he saw it) a statement he <u>clearly</u> admited to be false (exhibit 1 pg. 89 at 17-23) when shown the photographic evidence of the veiw from in front of his apartment. (exhibit 1, Q4) He also claims that, <u>afterward</u>, he ran back into his apartment, but on his clothes, came back out, jumped over a railing, fell an aproximate fifteen feet down to solid pavement and ran allmost the entire length of the parking lot from back to front (exhibit 1 pg. 74 at 13-15 and photo Q3) and came up the steps to the scene to see a male on top of a female, "just <u>getting up off</u> of her" (exhibit 1 pg. 74 at 20,21) (note if the petitioner was supposed to be getting up, <u>everything</u> else must have happened earlier, as he origionally testified, then admited to be false (exhibit 1 pg. 89 at 3-5 and at 17-23))

Wilson then claimed to have seen the petitioner's erect penis "sticking out the right side of his shorts" (exhibit 1 pg. 75 at 21,22) which were <u>not</u> pulled down (exhibit 1 pg. 94 at 20-24) nor was the leg pulled up (exhibit 1 pg. 96 at 8-10) where he then went into great detail to describe how this was acomplished (exhibit 1 pg. 98 at 9-11) Regretably Defence Attorney Yee never bothered to question Wilson about a description of the petitioners shorts, however as it later turned out during the petitioners own testimony and a <u>visual</u> display of the petitioners shorts, Wilson's testimony regarding this could not possibly be true, concidering the fact that the shorts in question were more than knee lenghth, which, concidering the petitioner's nearlly 6 feet 4 inch hight, would give the petitioner an inhuman nearlly 2 foot penis (exhibit 3 pg. 77 at 18 thru 78 at 3) (let me know if I really need to embarase myself by having prison medical send you an affadavit)

Ruiz on the other hand testified in the motion for a new trial, to being on the <u>gound</u> floor of the same apartment building as Wilson (exhibit 2 pg. 9 at 6) where he went imediately to the scene and saw the petitioner "standing up" and it was <u>Loyde</u> who was attacking the petitioner by "trying to pull his pants down and grabbing onto his leg and he was trying to get away from her" (exhibit 2 pg. 9 at 14 thru pg. 13 at 19) from a distance of 7 to 10 feet away (exhibit 2 pg. 14 at 9). Furthermore at <u>no</u> time did Ruiz see the petitioners

penis exposed. (exhibit 2 pg. 11 at 5,6)

The prosecutor's office only main argument for nearly 10 years has been Ruiz' testimony of 4 months between the time of the incedent and when he saw the petitioner for a brief moment at O.C.C.C., which whereas the petitioner has no reason to believe was intentional on Ruiz' part, the petitioner has know all along to be wrong but does not believe for a second that no-one in the prosecutor's office would have "accidently" neglected to verify, over the entire time arguing about it, on the desk top computers in every office. Access the petitioner has not had.

Finally, how this court can determine that Ruiz testimony is in any way supportive of Wilson's, or that Wilson's is somehow more reliable simply because Ruiz didn't see the same thing Wilson did is unreallistic. The fact is that the reason Ruiz did not see a man on top of a woman, punching her in the face and choking her and repeatedly banging her head on the ground and whatever else Loyde and Wilson want to claim is because it did not happen and there is no physical evidence to suggest that it did. Loyde had one bruise on the back of her head, which the petitioner has always admited giving her, and which took as long for her to get as it takes to say "let go of my shirt or die" which she got before she began screaming, but after tearing up my shirt. The only other bruises she aquired was one on her leg from a kick (obviously while standing), and a number of marks on the outside of her arms, and hands from trying to get her to let go of this petitioner's leg. There were no bruises anywhere around her face and no marks anywhere near her throat. The arm bruises verified by Ruiz as defencive blows in responce to the attack by Loyde. (exhibit 4 pgs. 1,2)

The petitioner submits this set of statement as absolutely true on this date of July 19 2007

Peter Halloran
petitioner